Goffstown District Court
No. 2000-266

DIANE FILLMORE

v.

FRANKLIN B. FILLMORE, JR.

December 11, 2001

*Solomon Professional Association*, of Londonderry (*Peter M. Solomon* on the brief, and *Elaine M. Kennedy* orally), for the plaintiff.

*Gawryl & MacAllister*, of Nashua (*Janine Gawryl* on the brief and orally), for the defendant.

BROCK, C.J. The defendant, Franklin B. Fillmore, Jr., appeals from an order of the Goffstown District Court (*Lawrence*, J.) granting a protective order to the plaintiff, Diane Fillmore. He raises two issues on appeal: 1) that there were insufficient allegations of fact to support the issuance of an *ex parte* temporary protective order to the plaintiff; and 2) that the court erred in concluding, after hearing, that the plaintiff was abused within the meaning of RSA chapter 173-B (Supp. 2000). For the reasons that follow, we vacate the orders.

The relevant facts follow. The parties were married for approximately fifteen years and have two children. Their relationship was strained, with heated arguments occurring frequently. The plaintiff testified to two incidents of physical abuse in the past. The first allegedly occurred at least eleven years prior to the filing of the request for a protective order when the defendant struck the plaintiff "in anger." The second incident, alleged to have taken place eight years ago, involved the defendant pushing the plaintiff into their child's slide during an argument. The plaintiff also testified that during an argument some months prior to the filing of her request for a protective order, the defendant threatened to make her life "a living hell" if she did not acquiesce to his wishes. She interpreted this to mean "[m]ore yelling and screaming, maybe hitting . . . ." The defendant testified that the statement was not a threat of violence and that he had apologized for the remark on several occasions.

On or about February 13, 2000, the defendant left for a weeklong vacation in Canada. While he was away, the plaintiff obtained the *ex parte* temporary protective order. In her petition, she stated, "[M]y husband has been emotionally [and] mentally abusing me. He screams at me [and] I am in fear of him hurting me and my children. He has hit me before in anger many years ago. I would like him out of the home until divorce proceedings are in place." Almost immediately upon his return from Canada, the defendant was served with the temporary order and escorted out of the home.

On appeal, "we review sufficiency of the evidence claims as a matter of law, and uphold the findings and rulings of the trial court unless they are lacking in evidential support or tainted by error of law." *Fichtner v.*

*Pittsley*, 146 N.H. 512, 515 (2001) (brackets, quotations and citations omitted). "We accord considerable weight to the trial court's judgments on the credibility of witnesses and the weight to be given testimony." *In re Estate of Cass*, 143 N.H. 57, 60 (1998) (quotation omitted).

We first consider the defendant's argument that the allegations contained in the plaintiff's domestic violence petition were legally insufficient to support the issuance of a temporary protective order. We agree.

■■ In order for the trial court to issue such an order, a petitioner must demonstrate that he or she is in "immediate and present danger of abuse." RSA 173-B:4, I. In this case, although not determinative, the fact that the defendant was in Canada when the plaintiff filed the *ex parte* petition is a factor that could be considered in determining whether the petitioner was in immediate and present danger of abuse. Additionally, the plaintiff not only acknowledged in her petition that the defendant did not have a history of violence, but she requested that he be allowed to contact her at reasonable times to discuss child visitation and marriage counseling. We conclude that the petition presented to the trial court contained insufficient allegations of fact to support the issuance of an *ex parte* domestic violence temporary protective order.

The defendant next argues that the district court's finding of abuse as defined in RSA chapter 173-B was unsupported by the evidence presented at the final hearing. We agree.

■ "We are the final arbiter of the meaning of a statute as expressed by the words of the statute itself. We interpret a statute to lead to a reasonable result and review a particular provision, not in isolation, but together with all associated sections." *Appeal of N.H. Troopers Assoc.*, 145 N.H. 288, 290 (2000) (quotations and citations omitted). Because RSA 173-B:1 contains an enumerated list of prohibited conduct, we read RSA 173-B:5 to require that a trial court must make a specific finding of criminal conduct in order to issue a final restraining order against a defendant.

RSA 173-B:5, I, provides that "[u]pon a showing of abuse of the plaintiff by a preponderance of the evidence, the court shall grant such relief as is necessary to bring about a cessation of abuse." RSA 173-B:1 defines "abuse" as "the commission or attempted commission of one or more of the following acts by a family or household member or current or former sexual or intimate partner and where such conduct constitutes a credible threat to the plaintiff's safety." RSA 173-B:1, I (Supp. 2000). Only two of the acts enumerated in the statute as constituting abuse are at issue in this appeal: criminal threatening as defined in RSA 631:4 (Supp. 2000) and

harassment as defined in RSA 644:4 (Supp. 2000). *See* RSA 173-B:1, I (b), (g).

An individual is guilty of criminal threatening when "[b]y physical conduct, the person purposely places or attempts to place another in fear of imminent bodily injury or physical contact." RSA 631:4, I (a). An individual is guilty of harassment if a person "[i]nsults, taunts, or challenges another in a manner likely to provoke a violent or disorderly response." RSA 644:4, I (c). Because the trial court made neither a specific finding that the defendant engaged in conduct criminal in nature, nor had sufficient evidence before it to do so, we conclude that it erred in issuing a final domestic violence protective order.

During the final hearing, the plaintiff stated that the defendant yelled at her, and she at him, when the couple argued. She also testified that the defendant had "hit" her twice in the distant past, and on one occasion threatened to "make [her] life a living hell." These incidents, in the context of a request for a domestic violence protective order, were too distant in time and non-specific to rise to the level of misconduct required to satisfy the threshold for either criminal threatening or harassment. *See* RSA 631:4, I; RSA 644:4, I.

For the reasons stated herein, we vacate the orders of the trial court that are the subject of this appeal.

*Vacated and remanded.*

BRODERICK, NADEAU, DALIANIS and DUGGAN, JJ., concurred.